William M. Audet (SBN 117456)
  waudet@audetlaw.com
"David" Ling Y. Kuang (SBN 296873)
  lkuang@audetlaw.com
Kurt D. Kessler (SBN 327334)
  kkessler@audetlaw.com
**AUDET & PARTNERS, LLP**
  711 Van Ness Avenue, Suite 500
  San Francisco, CA 94102-3275
  Telephone:   (415) 568-2555
  Facsimile:   (415) 568-2556

*Attorneys for Plaintiff Sagi Cezana, on behalf of*
*himself and all others similarly situated*

[Additional Counsel on Signature Block]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SAGI CEZANA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD FINANCIAL LLC, ROBINHOOD SECURITIES, LLC, and ROBINHOOD MARKETS, INC.,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT**<br><br>**FOR:**<br>**(1) BREACH OF CONTRACT;**<br>**(2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**(3) NEGLIGENCE PER SE;**<br>**(4) NEGLIGENCE;**<br>**(5) BREACH OF FIDUCIARY DUTY;**<br>**(6) CONSTRUCTIVE FRAUD; and**<br>**(7) VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff SAGI CEZANA, individually, and on behalf all others similarly situated, bring this class action lawsuit (collectively "Plaintiffs") against Defendants ROBINHOOD FINANCIAL LLC, ROBINHOOD SECURITIES, LLC, and ROBINHOOD MARKETS, INC. ("Robinhood," and together "the Parties"), based upon personal knowledge of the facts pertaining to themselves, and upon information and belief as to all other matters, and do hereby allege as follows:

## NATURE OF THE ACTION

1.      In late 2020, stocks for various companies began to fluctuate greatly, including the stock for the company American Movie Company ("AMC"), which experienced an extreme downturn due to the COVID-19 pandemic's effect on its users' ability to attend its theatres. AMC began to dramatically rise when retail investors began buying the stock in January 2021.

2.      This rise was due in part to the efforts of individual investors using Robinhood's App, purchasing a stock they believed had value, in addition to efforts from retail investors originating online to combat the actions of hedge funds to short the stock, who viewed AMC as a prime "short" target, or a stock to bet against to profit from as it fell. Various hedge funds had begun to "short" AMC, or borrowing and subsequently selling a stock at a current price, and promising to buy the stock back from the lender at a later date, with the goal that the value of the stock falls, giving the short seller the difference between the initial value of the stock and the lower, current value of the stock in profit.

3.      This led to a later phenomenon known as a "short squeeze," where a stock that had been heavily shorted quickly jumps significantly higher, placing short sellers in great distress as they began to owe immense sums of money.

4.      This short squeeze benefited the aforementioned retail investors, who were reaping the gains of a stock shooting up at an incredible rate. However, the firms that were shorting AMC were soon in debt for billions as the stock continued to grow immensely along with their liability.

5.      Robinhood is an online brokerage firm on which many retail investors invest, given its consumer-friendly label as a firm that allows open trading and does not charge fees.

**CLASS ACTION COMPLAINT**

6.      Robinhood purposefully, willfully, and knowingly removed its users' ability to purchase AMC from its trading platform in the midst of the short squeeze, depriving retail investors of the ability to invest in the open-market and manipulating the open-market to artificially lower the price.

7.      Robinhood's actions harmed Plaintiffs and the Class.

## **THE PARTIES**

8.      Plaintiff Sagi Cezana was and is a citizen of the State of California.

9.      Defendant Robinhood Financial LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly-owned subsidiary of Robinhood Markets, Inc. Robinhood Financial LLC is registered as a broker-deal with the U.S. Securities & Exchange Commission ("SEC"). Defendant Robinhood Financial LLC acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities, LLC.

10.     Defendant Robinhood Securities, LLC is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746. It is a wholly owned subsidiary of Defendant Robinhood Markets, Inc. Defendant Robinhood Securities, LLC is registered as a broker-dealer with the SEC. Defendant Robinhood Financial LLC acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial.

11.     Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets, Inc. is the corporate parent of Defendants Robinhood Financial LLC and Robinhood Securities, LLC.

12.     The above-named corporate defendants herein are referred to collectively as "Robinhood."

## **JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction over the claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), since some of the members of the Proposed

**CLASS ACTION COMPLAINT**

Class (defined *infra*) are citizens of a State different from that of the Defendant and, upon the original filing of this Complaint, members of the putative class resided in states around the country; there are more than 100 putative class members; and the amount in controversy exceeds $5 million, exclusive of interest and costs.

14.     The Court also has personal jurisdiction over the parties because Defendant Robinhood conducts a major part of their national operations, advertising, and sales through continuous business activity in this District.

15.     Venue is further appropriate pursuant to 28 U.S.C. §1391 because Defendant conducts a large amount of their business in this District, because it has specifically marketed, advertised, and made substantial sales in California, and because Defendant has substantial relationships in this District. Venue is also proper in this Court because a substantial part of the events and actions giving rise to the harm suffered by members of the Proposed Class occurred in this District.

## FACTUAL ALLEGATIONS

### I.     Robinhood's Origins

16.     Robinhood is an online brokerage firm. Its users place securities trades through the firm's website, by using a web-based application (or "app"). Robinhood permits users to purchase and sell securities, including futures contracts.

17.     Robinhood was founded in 2013 and launched as a product 2015, and soon grew immensely because it pioneered commission-free trading for stocks – or trading stocks for no charge.

18.     Robinhood has experienced significant growth as a relatively new online brokerage firm. In 2019, Robinhood raised $323 million in funding at a $7.6 billion valuation. The firm markets itself primarily to younger investors and claims over 10 million users of its trading app.

19.     On or about March 23, 2016, Robinhood's official Twitter account stated: "Let the people trade."[1]

---

[1] @RobinhoodApp, Twitter Post, Twitter (March 23, 2016) available at
https://twitter.com/RobinhoodApp/status/712708069369782272

1   20.    Robinhood's mission statement "is to democratize finance for all. We believe that

2   everyone should have access to the financial markets, so we've built Robinhood from the ground up

3   to make investing friendly, approachable, and understandable for newcomers and experts alike."[2]

4   21.    While Robinhood makes its users sign a "Customer Agreement" – the stock traders on

5   Robinhood are not its customers, but its product. Robinhood does not charge for trades, but instead

6   sells trades to "market makers" or firms such as Citadel Securities (Robinhood's largest customer)

7   who act as middleman and make a profit on this transaction. Simply put – Robinhood's customers are

8   financial firms, and the users are the product.[3]

9   **II.    The Rise of AMC**

10   22.    In January of 2021, AMC stock rose steadily, gaining nearly 50% in the first 3 weeks

11   of the year.

12   23.    On Monday, January 25th, AMC announced that it had raised $917 million in capital

13   to see it through the pandemic.[4] This news led to a 26% jump on the 25th and a 12 percent jump on

14   the 26th.

15   24.    After news broke that AMC was one of Wall Street's most shorted stocks, retail

16   investors began to invest heavily in AMC, shooting it up 360% overnight to a value of $20.36 per

17   share. Within an hour into the trading day, more than 500 million shares of AMC had changed hands

18   – compared to a 30-day average volume of 86 million shares today. By the end of the trading day,

19   more than 1.1 billion shares of AMC had changed hands.[5]

20   25.    This rise was distributing wealth to smaller, retailer investors away from the hands of

21   hedge funds and massive Wall Street firms that were losing money in droves as the stocks they had

22   shorted continued to rise.

23

24   [2] Robinhood, Our Mission, (January 28, 2021), available at
https://robinhood.com/us/en/support/articles/our-mission/

25   [3] Edward Ongweso Jr., *Robinhood's Customers Are Hedge Funds Like Citadel, Its Users Are Its*
*Products*, Vice News (January 28, 2021), available at

26   https://www.vice.com/en/article/qjpnz5/robinhoods-customers-are-hedge-funds-like-citadel-its-users-are-the-product

27   [4] https://www.businesswire.com/news/home/20210125005273/en/AMC-Raises-917-Million-of-Fresh-Investment-Capital-Since-Mid-December-of-2020

28   [5] https://www.cnbc.com/2021/01/27/amc-shares-triple-as-retail-investor-raid-of-hedge-fund-short-targets-spreads-from-gamestop.html

**CLASS ACTION COMPLAINT**

26.     CNBC's Jim Cramer, a financial markets pundit, noted the success of the online retail investors and praised them, saying "It's incredible to watch. I think they're succeeding beyond their wildest dreams." Cramer noted that they were crushing the short holdings from the major firms and profiting at their expense.[6]

27.     Melvin Capital received a $2.8 billion bailout after the precipitous rise of some of the stocks on January 26.

28.     One firm that bailed out Melvin Capital, to the tune of $2 billion, was Citadel, the aforementioned biggest customer of Robinhood.

29.     Throughout the dramatic rise of AMC and other stocks, Robinhood users continuously complained of delays in trades or outages in the service, making them unable to execute trades at the precise time and price they desired.

**III.     January 28th**

30.     On or about the morning of January 28, 2021, in order to slow the growth of AMC and deprive their users of the ability to use their service, Robinhood abruptly, purposefully, willfully, and knowingly pulled AMC from their app.[7]

31.     This led to a massive fall in AMC, as despite soaring as much as 570% over the course of the week, AMC fell by 55% after Robinhood restricted their users' ability to purchase new AMC stock.[8]

32.     By restricting their users from purchasing, there were suddenly more sellers than buyers, and various stocks fell.

33.     Upon doing so, there was bipartisan outcry from across the country as it was seen as a sign of market manipulation that Robinhood was restricting its users from purchasing new stock.

---

[6] https://www.cnbc.com/2021/01/14/jim-cramer-gamestop-bed-bath-beyond-are-surging-on-short-busting.html

[7] Robinhood, *Keeping Customers Informed Through Market Volatility*, (January 28, 2021), available at https://blog.robinhood.com/news/2021/1/28/keeping-customers-informed-through-market-volatility

[8] https://www.forbes.com/sites/jonathanponciano/2021/01/28/meme-stocks-begin-to-crumble-gamestop-market-value-falls-14-billion-amc-crashes-55-while-dow-jumps-600-points/?sh=4b3d8b2f4283

**CLASS ACTION COMPLAINT**

34.     Representative Rashida Tlaib, Congresswoman from Michigan, said that "This is beyond absurd. @FSCDems need to have a hearing on Robinhood's market manipulation. They're blocking the ability to trade to protect Wall St. hedge funds, stealing millions of dollars from their users to protect people who've used the stock market as a casino for decades."[9]

35.     Representative Alexandria Ocasio-Cortez, Congresswoman from New York, tweeted that "This is unacceptable. We now need to know more about @RobinhoodApp 's decision to block retail investors from purchasing stock while hedge funds are freely able to trade the stock as they see fit. As a member of the Financial Services Cmte, I'd support a hearing if necessary.", to which Senator Ted Cruz of Texas indicated his support.[10]

36.     Committees in both houses of Congress  published that they will be holding hearings on the stock market after Robinhood restricted trading.[11]

37.     The New York Attorney General's office published that they would be looking into Robinhood and activity on the app in relation to AMC and other stocks.[12]

38.     The SEC assertedthat they would "closely review actions taken by regulated entities that may disadvantage investors or otherwise unduly inhibit their ability to trade certain securities" and "act to protect retail investors when the facts demonstrate abusive or manipulative trading activity that is prohibited by the federal securities laws."[13]

---

[9] @RashidaTlaib, Twitter Post, Twitter (January 28, 2021), available at https://twitter.com/RashidaTlaib/status/1354807292667981828?s=20

[10] @AOC, Twitter Post, Twitter (January 28, 2021), available at https://twitter.com/AOC/status/1354830697459032066

[11] David Shepardson, *U.S. Congress to hold hearings on GameStop trading, state of stock markets*, Reuters (January 28, 2021), available at https://www.reuters.com/article/us-retail-trading-usa-congress/u-s-congress-to-hold-hearings-on-gamestop-trading-state-of-stock-markets-idUSKBN29X33T

[12] New York State Attorney General Press Release, *Attorney General James Reviewing Robinhood App Activity*, (January 28, 2019), available at https://ag.ny.gov/press-release/2021/attorney-general-james-reviewing-robinhood-app-activity

[13] Securities And Exchange Commission Public Statement, *Statement of Acting Chair Lee and Commissioners Peirce, Roisman, and Crenshaw Regarding Recent Market Volatility*, (January 29, 2021), available at https://www.sec.gov/news/public-statement/joint-statement-market-volatility-2021-01-29

**CLASS ACTION COMPLAINT**

39.     On January 29, 2021, while ostensibly reinstating the purchases of previously restricted securities, upon information and belief, Robinhood in fact continued to limit the purchase of fractional shares and only allowed a maximum of one share to be purchased.

40.     Upon information and belief, Robinhood's actions were done purposefully and knowingly to manipulate the market for the benefit of people and financial intuitions who were not Robinhood's users.

41.     Since pulling the stock from their app, AMC prices have gone up from a low point of approximately $7.51, with the stock ending the trading day at $8.68 and shooting up to over $14 in after-hours trading, depriving investors of potential gains.

42.     In sum, Robinhood has restricted retailer investors from purchasing AMC in the Robinhood app for no legitimate reason, depriving retailer investors from full use and enjoyment of Robinhood's services to purchase securities.

43.     The Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Robinhood, espouses rule 5310 regarding "Best Execution and Interpositioning." Rule 5310.01 requires that brokers, such as Robinhood "must make every effort to execute a marketable customer order that it receives promptly and fully." By failing to respond at all to users that have placed timely trades on its app, in addition to completely preventing users from even attempting trades at all, Robinhood has breached its obligations under FINRA § 5310.01 and caused its users substantial losses.

44.     Robinhood continues to arbitrarily pull other securities, such as Gamestop, American Airlines, Blackberry, Bed Bath & Beyond, Castor Maritime, Express, Koss Corporation, Naked Brand Group, Nokia, Sundial Growers, Tootsie Roll, and Trivago ("Additional Stocks") from its app for the same illegitimate reason.

45.     Upon information and belief, Robinhood is pulling securities like AMC and Additional Stocks from its platform in order to slow the growth of stocks and help institutional investors and firms with a connection to Robinhood's revenue stream, such as Citadel, at the expense of Robinhood's devoted base of retail investors. Simply put, Robinhood is helping its corporate and

**CLASS ACTION COMPLAINT**

1    financial firm customers, not its retail end-users. Robinhood reported raising a $1 billion dollar

2    financing round from institutional investors in the midst of the foregoing debacle.

3        46.      On or about January 28, 2021, Plaintiff Cezana attempted to purchase additional shares

4    of AMC stocks. Without prior notice or warning, Robinhood failed to execute the Plaintiff Cezana's

5    buy order for AMC stock.  Plaintiff Cezana is a member of the class and has suffered damages as a

6    result of the failure to execute his buy order and other buy orders of similarly situated class members.

7        47.      Thus, Plaintiff, like so many other retail investors, lost out on earning opportunities

8    and the opportunity to buy shares of AMC on Robinhood at the price he desired.

9

10                                 **CLASS ACTION ALLEGATIONS**

11        48.      Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the

12    following Class, as defined as: **All Robinhood retail users within the United States.**

13        49.      Additionally, or in the alternative, Plaintiff brings claims pursuant to Federal Rule of

14    Civil Procedure 23 on behalf of the following Subclass(es), as defined as:

15           a.    *Restricted Trading Subclass*: **All Robinhood retail users within the United States**

16                **who were not able to execute trades on AMC, American Airlines, Blackberry, Bed**

17                **Bath & Beyond, Castor Maritime, Express, GameStop, Koss Corporation, Naked**

18                **Brand Group, Nokia, Sundial Growers, Tootsie Roll, and Trivago after**

19                **Robinhood restricted their ability to make stock purchases on the app.**

20           b.    *California Subclass*: **All Robinhood retail users within the State of California who**

21                **were not able to execute trades on AMC, American Airlines, Blackberry, Bed**

22                **Bath & Beyond, Castor Maritime, Express, GameStop, Koss Corporation, Naked**

23                **Brand Group, Nokia, Sundial Growers, Tootsie Roll, and Trivago after**

24                **Robinhood restricted their ability to make stock purchases on the app.**

25        50.      Excluded from the Class and Subclass(es) are the Robinhood entities and their current

26    employees, counsel for either party, as well as the Court and its personnel presiding over this action.

27        51.      This action has been brought and may properly be maintained as a class action against

28    Robinhood pursuant to the provisions of Federal Rule of Civil Procedure 23.

52.     **Numerosity:** The precise number of members of the proposed Class is unknown to Plaintiff at this time, but, based on information and belief, Class members are so numerous that their individual joinder herein is impracticable. Based on information and belief and publicly available reports, Class members number in the hundreds of thousands if not millions. Subclass members are likely in the thousands. All Class and Subclass members may be notified of the pendency of this action by reference to Robinhood's records, or by other alternative means.

53.     **Commonality:** Numerous questions of law or fact are common to the claims of Plaintiff and members of the proposed Class. These common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to the following:

    a.  Whether Robinhood knowingly failed to provide the financial services that were needed to handle reasonable consumer demand in high-volume trading times, including trading securities that are available on every other competitive trading platform;

    b.  Whether Robinhood failed to uphold its duty of care to its users when it purposefully restricted purchases of AMC and Additional Stocks on their app;

    c.  Whether Robinhood restricted purchases of AMC and Additional Stocks purposefully or at the direction of others to benefit the finances of those it is associated with at the expense of holders of AMC stock and Additional Stocks, many of which are Robinhood users;

    d.  Whether Robinhood violated FINRA § 5310, alongside numerous other FINRA rules, state laws, and federal regulations;

    e.  Whether Robinhood violated consumer protection laws in failing to disclose to its users that the services it advertised as open would not include the ability for Robinhood to arbitrarily restrict the purchasing of certain securities;

    f.  Whether Robinhood was in breach of its legal, regulatory, and licensing requirements by failing to provide adequate access to financial services;

    g.  Whether Robinhood was in breach of its contracts and/or the implied covenant of good faith and fair dealing in connection with its failure to provide financial services;

h.  Whether Robinhood was negligent or grossly negligent by failing to provide financial services in a timely manner;

i.  Whether Robinhood breached its fiduciary duty to its users by failing to provide adequate access to financial services;

j.  Whether Robinhood was unjustly enriched by its conduct prohibiting its users from purchasing AMC stock and Additional Stocks and from artificially limiting the purchases of AMC stock and Additional Stocks by the overall market;

k.  Whether and to what extent Plaintiff and the Class were injured by Robinhood's conduct and the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief; and

l.  Whether Plaintiff and the Class are entitled to injunctive and declaratory relief.

54.  **Typicality:** The claims of the named Plaintiff are typical of the claims of the proposed Class in that the named Plaintiff was a Robinhood user during the class period and was unable to purchase AMC and Additional Stocks and make time-sensitive trades on AMC and Additional Stocks and thus sustained damages as a result of Robinhood's wrongful conduct in restricting the purchase of AMC and Additional Stocks.

55.  **Adequate Representation:** Plaintiff will fairly and adequately represent the interests of the Class in that he has no conflicts with any other Class members. Plaintiff has retained competent counsel experienced in prosecuting complex class actions in federal court, including those involving financial services, and they will vigorously litigate this class action on his behalf and on behalf of the class.

56.  **Predominance and Superiority:** There is no plain, speedy, or adequate remedy other than by maintenance of this class action. A class action is superior to other available means, if any, for the fair and efficient adjudication of this controversy. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant. Additionally, given the relatively modest damages sustained by most individual Class members, few, if any, proposed Class members could or would sustain the economic burden of pursuing individual remedies for Robinhood's wrongful

**CLASS ACTION COMPLAINT**

conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court. This class action presents no material difficulties in management.

57.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. A class action will permit an orderly and expeditious administration of the claims of the Class, will foster economies of time, effort, and expense, and will insure uniformity of decisions. The prosecution of individual actions by Class members would create the risk of (a) inconsistent or varying adjudications with respect to individual Class members; and (b) be grossly impracticable because the cost of vindicating an individual Class member's claim would likely exceed the value of the claim.

58.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which may produce incompatible standards of conduct for Defendants. 34. Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B) because the prosecution of separate actions by individual members of the proposed Class would create a risk of adjudications with respect to individual Class members which may, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

59.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Robinhood has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the Class as a whole. Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because questions of law or fact common to the Class members predominate over any questions affecting only individual members, and a Class action is superior to other available remedies for the fair and efficient adjudication of this controversy.

60.     The amount of damages available to the individual Plaintiff is insufficient to make litigation addressing Robinhood's conduct economically feasible for most in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory

1    judgments and increases the delay and expense to all parties and the court system presented by the

2    legal and factual issues of the case. By contrast, the class action device presents far fewer

3    management difficulties and provides the benefits of a single adjudication, economy of scale, and

4    comprehensive supervision by a single court.

5           61.      Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because

6    questions of law or fact common to the Class members may be certified and decided by this Court on

7    a class wide basis.

8

9                                    **CAUSES OF ACTION**

10                                           **Count I**

11                              **Breach of Contract**

12           62.      Plaintiffs hereby incorporate by reference the factual allegations set forth above.

13           63.      In order to use the Robinhood trading platform, a potential user must enter into the

14    Customer Agreement with Robinhood.

15           64.      Plaintiff and all class members did enter into a Customer Agreement with Robinhood

16    before beginning to use the app.

17           65.      Robinhood breached its Customer Agreement by failing to disclose that its platform

18    was going to arbitrarily restrict a security from being purchased on the app; that Robinhood failed to

19    provide adequate explanation to its users as to why the security was being pulled; that Robinhood

20    knowingly put their users at a disadvantage in the high-stakes and fast moving stock market compared

21    to users who used other trading apps or services; that Robinhood's prohibited Plaintiff and the Class

22    from performing trades on the stock market in a timely manner (or at all) under the contract; that

23    Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements in the

24    running of a stock trading marketplace; and that Robinhood failed to exercise trades and actions

25    requested by users as is required under law.

26           66.      As such, Robinhood breached its Customer Agreement with Plaintiff and the Class.

27           67.      Robinhood's failure to perform its duties and its breaches of the Customer Agreement

28    resulted in damages and losses to Plaintiff and the Class members and exposes them to continuing

**CLASS ACTION COMPLAINT**

harm due to Robinhood's ongoing failure to perform its obligations under the Customer Agreement. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## Count II

### Breach of Implied Covenant of Good Faith & Fair Dealing

68.  Plaintiffs hereby incorporate by reference the factual allegations set forth above.

69.  Plaintiffs and the Class and Subclass entered into the Customer Agreement with Defendant Robinhood to open a Robinhood trading account. They agreed to Robinhood's Terms and Conditions in order to use Robinhood's website and trading platform.

70.  Plaintiffs and members of the Class and Subclass fulfilled their obligations under these contracts by adhering to the agreed upon terms and by using Robinhood's trading services through its website, app, and trading platform.

71.  Robinhood was obligated to provide the trading services required under those contracts at all times, including but not limited to, trades for AMC and Additional Stocks.

72.  When initially signing up for Robinhood, Plaintiff and all those similarly situated could and most actually did trade AMC and Additional Stocks.

73.  Robinhood unfairly interfered with the rights of Plaintiffs and members of the Class and Subclass to receive the benefits of the Customer Agreement by, among other things, (i) failing to provide services necessary to timely execute a trade on the stock market; (ii) failing to allow its users to trade certain securities at all; (iii) failing to inform its users in a timely and effective manner of the drastic changes in trading abilities; and (iv) prohibiting plaintiffs from buying AMC and other stocks for Robinhood's own pecuniary interest and not disclosing that interest to Plaintiffs and all Class and Subclass members.

74.  Robinhood acted in bad faith by placing its interests, and the interests of its associates, over its contractual duties to its users.

75.  Robinhood's conduct has caused Plaintiffs and members of the Class and Subclass harm, losses, and damages. These losses reflect damages to Plaintiffs and members of the Class and Subclass in an amount to be determined at trial or separate proceedings as necessary.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Count III</u>**

**Negligence Per Se**

76.     Plaintiffs hereby incorporate by reference the factual allegations set forth above.

77.     Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its users.

78.     Robinhood had a statutory duty to exercise reasonable care in providing trades on the free, open market for its users.

79.     Robinhood unlawfully breached its statutory duties when it (i) restricted the purchases of AMC and Additional Stocks on its app; (ii) failed to provide its users services related to AMC and Additional Stocks; (iii) failed to notify users in a timely manner of the AMC and Additional Stocks "blackout," or the total restriction of AMC and Additional Stocks purchases on its app.

80.     Robinhood's conduct as set forth in this Complaint was devoid of even the most minimum level of care, and its acts and omissions were and continue to be an extreme departure from the ordinary standard of care. Their actions breach the duty of care to their users, but are also inconsistent with the standard of care expected from similar firms in the stock marketplace industry.

81.     Robinhood completely disregarded the interests of its users by restricting their ability to purchase AMC and Additional Stocks, a breach of the standard of care that falls so far below normal conduct for a brokerage service that it amounts to a complete dereliction of its duties.

82.     Robinhood not only violated the relevant statute, ordinance, or regulation but failed to do what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law.

83.     Robinhood's grossly negligent and wrongful breaches of its duties owed to Plaintiffs and members of the Class and Subclass proximately caused losses and damages that would not have occurred but for Robinhood's gross breach of its duty of due care. These losses reflect damages to Plaintiffs and the Class and Subclass in an amount to be determined at trial or separate proceedings as necessary.

**CLASS ACTION COMPLAINT**

1

2

## Count IV

## Negligence [Cal. Civ. Code § 1714]

3        84.     Plaintiffs hereby incorporate by reference the factual allegations set forth above.

4  Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its

5  users.

6        85.     Robinhood had a common law duty to exercise reasonable care in providing trades on

7  the free, open market for its users.

8        86.     Robinhood unlawfully breached its common law duties when it (i) restricted the

9  purchases of AMC and Additional Stocks on its app; (ii) failed to provide its users services related to

10  AMC and Additional Stocks; (iii) failed to notify users in a timely manner of the AMC and Additional

11  Stocks "blackout," or the total restriction of AMC and Additional Stocks purchases on its app.

12        87.     Robinhood's conduct as set forth in this Complaint was devoid of even the most

13  minimum level of care, and its acts and omissions were and continue to be an extreme departure from

14  the ordinary standard of care. Their actions breach the duty of care to their users, but are also

15  inconsistent with the standard of care expected from similar firms in the stock marketplace industry.

16        88.     Robinhood completely disregarded the interests of its users by restricting their ability

17  to purchase AMC and Additional Stocks, a breach of the standard of care that falls so far below

18  normal conduct for a brokerage service that it amounts to a complete dereliction of its duties.

19        89.     Robinhood's grossly negligent and wrongful breaches of its duties owed to Plaintiffs

20  and members of the Class and Subclass proximately caused losses and damages that would not have

21  occurred but for Robinhood's gross breach of its duty of due care. These losses reflect damages to

22  Plaintiffs and the Class and Subclass in an amount to be determined at trial or separate proceedings as

23  necessary.

24

## Count V

25

## Breach of Fiduciary Duty

26        90.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

27        91.     As a licensed provider of financial services, Robinhood at all times relevant was a

28  fiduciary to Plaintiff and the Class members and owed them the highest level of good faith and

integrity in the course of performing financial services on their behalf, services that include the buying and selling of stock. Robinhood also acted as a fiduciary to all users who agreed to the Customer Agreement.

92.     Robinhood breached its fiduciary duties to Plaintiff and the Class by failing to disclose that it would restrict AMC and Additional Stocks purchases in a timely manner; actually restricting new purchases of AMC and Additional Stocks; restricting purchases of AMC and Additional Stocks for its own pecuniary benefits; failing to provide access to its financial services in a timely manner; failing to comply with all applicable legal, regulatory, and licensing requirements; failing to exercise trades and actions requested by users in a complete and timely manner (also required by FINRA § 5310).

93.     Robinhood's conduct caused and continues to cause Plaintiff and the Class members' harm, losses, and damages. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

### Count VI

### Constructive Fraud

94.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

95.     Robinhood owed Plaintiff and the Class fiduciary duties as their broker for selling securities.

96.     Robinhood owed Plaintiff and the Class the utmost duty of care as their fiduciary, including the duty to fully disclose material facts relating to their brokerage relationship.

97.     Robinhood represented to Plaintiff and the class that it was a brokerage service dedicated to free trading and democratizing the stock market.

98.     Plaintiff and the Class chose Robinhood as their brokerage service in part due to Robinhood's assurances that it was consumer friendly as a firm that allows open trading.

99.     Robinhood subsequently restricted what Plaintiff and the Class were able to buy on their brokerage, contrary to their representations.

**CLASS ACTION COMPLAINT**

100.     Plaintiff and the Class's reliance on Robinhood's false representations were substantial factors in causing Plaintiff harm, as they were unable to trade with freedom given Robinhood's restrictions.

## Count VII

### Violation of California's Unfair Competition Law [Cal. Bus. & Prof. Code § 17200 et seq.]

### (California Subclass)

101.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

102.     California's Unfair Competition Law ("UCL") is designed to protect consumers from unlawful, fraudulent, and/or unfair business practices. Robinhood's restrictions on the trade of securities within its app constitutes an unlawful business practice.

103.     **Unlawful Practices**: A practice is "unlawful" if it violates a law other than the UCL. Robinhood violated Plaintiff and the Class's common law and California statutory rights when it failed to provide complete trading services as to AMC and other stocks. Robinhood's negligence, breach of contract, and breach of fiduciary duty made Plaintiff and the Class unable to trade stock in AMC and Additional Stocks and lose out on massive potential gains.

104.     These violations of common and state as the predicate violations under the unlawful prong of the UCL, as Robinhood created private causes of action against it by damaging the property rights of Plaintiff and the Class via its unlawful conduct.

105.     **Fraudulent Practices**: A practice is "fraudulent" if members of the general public were or are likely to be deceived. Robinhood's messaging that it was an open platform and its mission to "democratize" trading is likely to deceive users into believing that they are truly open to purchase how they please on Robinhood's marketplace, when in fact Robinhood will arbitrarily restrict what stocks its users can purchase.

106.     **Unfair Practices**: The UCL gives courts maximum discretion to address improper business practices that are "unfair." Robinhood's business practices have become, and will continue to be, unfair because Robinhood users were assured that they would be able to trade freely on the Robinhood service and not have what stocks they were able to trade in be arbitrarily restricted at the potentially nebulous whims of Robinhood. The gravity of the harm caused to Robinhood users, such

as Plaintiff, far outweighs any business reason, justification, or motive Robinhood may have had for engaging in its unfair business practices.

107.    As a result of Robinhood's unlawful, fraudulent, and/or unfair business practices, Plaintiffs suffered injury in fact and have lost a property interest in the values of their stock portfolios given their inability to effectively purchase new stock on the Robinhood platform.

108.    Accordingly, Plaintiffs and the other Class members have suffered injury in fact including lost money or property as a result of Robinhood's misconduct.

109.    Plaintiff and the Class seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices.

110.    Plaintiff and the Class requests that this Court enter such orders or judgments as may be necessary to enjoin Robinhood from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345; and for such other relief set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, demands a jury trial and prays for relief that this Court enter judgment in their favor and that of the Proposed Class and the proposed Subclass, as defined herein, and against Defendant Robinhood as follows:

i.   Enter an immediate injunction requiring Robinhood to fully reinstate AMC and all the other stocks it restricted in the announcement on January 28, 2021 on their trading platform;

ii.  Restrain Robinhood, their officers, agents, servants, employees, attorneys, and those in active concert or participation with them, from the continued and unauthorized restriction of trading ability of the Plaintiff and Proposed Class and proposed subclasses, as defined herein;

iii. Certify the Proposed Class as well as any suitable subclasses, under Fed. R. Civ. P. 23;

iv.  Appoint Plaintiff and their legal counsel as both named representatives for the Proposed Class (or for any suitable subclasses), and as Class Counsel, respectively;

**CLASS ACTION COMPLAINT**

v.   Award Plaintiffs and the Proposed Class (or any suitable subclass): (i) actual, compensatory, and consequential damages, (ii) punitive and treble damages, as allowed for under the relevant laws, (iii) restitution, disgorgement, reimbursement, and/or other equitable relief as the Court deems just and proper, (iv) costs, including experts' fees and attorneys' fees and expenses, and any other reasonable costs, and (v) pre- and post-judgment interest, to the extent allowed under the relevant laws;

vi.   For any such other and additional relief that this Court should deem as just and proper.

Dated: <u>January 29, 2021</u>                                   Respectfully submitted,

<u>s/ *William M. Audet*</u>
William M. Audet (SBN 117456)
waudet@audetlaw.com
"David" Ling Y. Kuang (SBN 296873)
lkuang@audetlaw.com
Kurt D. Kessler (SBN 327334)
kkessler@audetlaw.com
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102-3275
Telephone:     (415) 568-2555
Facsimile:     (415) 568-2556

Robert L. Lieff (SBN 037568)
rlieff@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:     (415) 956-1000
Facsimile:     (415) 956-1008

Jack Russo (SBN 096068)
jrusso@computerlaw.com
**COMPUTER LAW GROUP, LLP**
401 Florence Street
Palo Alto, CA 94301

Telephone:     (650) 327-9800
Facsimile:     (650) 618-1863

*Attorneys for Plaintiff Sagi Cezana, on behalf of himself and all others similarly situated*

20

**CLASS ACTION COMPLAINT**